all right we'll begin with this argument and mister martinez uh... we'll hear from you first thank you your honor good good uh... good morning and may it please the court the supreme court has made clear that arbitration agreements should almost always be enforced that's true even for federal statutory claims unless there's a clear and irreconcilable conflict between arbitration and the statutory scheme at issue there's no conflict here and so plaintiff's claims for money damages should be arbitrated I'm sorry I have so many questions and I'm hoping you can help me just at the very beginning with the premise that if there is this clear conflict what happens the preclusion test that everybody is quoting is that if congress has evinced an intent to preclude a waiver of the statutory right at issue then there's a conflict but then the second step is and therefore the court has discretion as to whether enforce to enforce the how can that be if congress has evinced an intent to preclude a waiver of the statutory rights at issue where does the discretion come from I'm just right at the first step I'm so confused I think that's a good question your honor I would say two things first of all uh... we're really focused on the first step we don't think there we think there's no inherent conflict here so you don't even have to get to that I do think you've correctly stated the well settled precedent from this court and that all the courts have said which is that if there is an inherent conflict then there's discretion I think it's I think it's a good question and it's not totally clear to me why such discretion would exist if it's true that there is in fact a categorical conflict it may be that that that language comes out of decisions where uh... you know the intent of congress was not to categorically preclude arbitration but rather to grant such discretion in which case of course if congress is granting the discretion fair enough then you would have that but our argument doesn't really turn on that because well I know but I'm just trying to get my hands around this kind of two step thing I'm trying to figure out what we're doing when we get to the discretion stage but sorry go on no I think it's a fair question I think our perspective is you don't you shouldn't get to the discretion stage because there's no inherent conflict here and I think that's the most sort of important point uh... you know I do want to just just to kind of road map a couple things that I want to cover at some point or another in my presentation I do want to talk about why the inherent conflict test is hard to satisfy under the supreme court precedent I want to talk about how arbitration is fully consistent uh... here with the purposes of the code I want to talk about the relevant precedent from this court the second circuit in the supreme court and then finally I want to just emphasize why we don't think arbitration here poses any threat to the automatic stay or to the uh... bankruptcy court's ability to police stay violations and just to start with the test uh... I think the key thing that comes out of the supreme court's decisions over and over and over again including most recently in the epic systems case is that this test uh... although it does allow for uh... a conflict to be established through purpose it's a very tough test to satisfy in epic the court called it a heavy burden it said it would be a stout uphill climb uh... and it said that any inherent conflict had to be clear manifest and irreconcilable and the supreme court has of course rejected the assertion of an inherent conflict in every single case in which it's been asked to find one including in really important statutory schemes involving antitrust securities discrimination law, RICO, etc. and we don't think there's any uh... any reason to depart from that here I think the final thing I'll just say about the test is that what the supreme court has emphasized in uh... in epic is that the text of the statute really is the most important factor and here I'm quoting the absence of any specific statutory discussion of arbitration is an important and telling clue that congress has not displaced the FAA so all that is to say I think the test strongly supports us and really puts a very high burden on the other side to show that there's an inherent conflict now we don't think there's an inherent conflict here essentially uh... I'd like to sort of focus on four things first of all uh... the purpose of the bankruptcy code and how how that purpose intersects with the 362k claim for money damages that's at issue in this case arbitrating plaintiff's money damages claims is not going to undermine the core purposes of the code it's not going to undermine the prompt effectual or centralized administration of the uh... of the bankruptcy estate in bankruptcy I think that statement goes to the core of the lower courts uh... rulings in this case and uh... as I understand it uh... the plaintiffs make the claim that this is a systemic problem uh... and of course that's indicated looks like every one of the emails uh... is following a script it's used in almost identical language but they also make the allegation and of course have asserted that this is a large systemic problem uh... and uh... the argument is that uh... the remedy uh... is uh... focused on a 362k which is a bankruptcy court claim uh... and which would uh... address uh... all of these people across the country uh... who are involved in credit card uh... pursuits of credit cards after bankruptcy filings uh... the argument would be that if we carve out each individual arbitration you have non-bankruptcy judges adjudicating 362k claims and could reach different claims different reasoning uh... uh... to solve a systemic problem you may have hundreds of those things uh... or thousands but there's no real indication I don't think in the record uh... but uh... that to me is the core question and whether that is sufficient if we accept the notion that uh... the plaintiffs are addressing a systemic problem uh... and uh... undermining the 362a stay uh... that uh... it's a bankruptcy court issue uh... which has to have some kind of control over everybody involved that's one of the biggest benefits of bankruptcy uh... is the stay and the collection of all claims and so uh... the question is whether that is consistent with the purposes of bankruptcy to carve out uh... uh... uh... the arbitration I think your arbitration clause doesn't permit class class arbitration so uh... what we're talking about is individualized arbitrations for every credit card holder versus a bankruptcy court's ruling on a 362k uh... and it does look I uh... what evidence is in the record uh... it looks like uh... the representatives of uh... of uh... Goldman Sachs Bank uh... were following a script almost identical word for word uh... and uh... obviously in good faith they probably didn't know the bankruptcy stopped things and they just kept doing it but uh... somewhere along the line there was uh... uh... lack of communication or lack of training or a lack of structural organization that allowed them to keep collecting the credit cards uh... after a bankruptcy is filed and of course uh... that's a bankruptcy problem and not an arbitration uh... I think the lower courts are uh... on this and uh... so I'm just maybe you can sort of focus on that uh... yeah so there's a lot there's a lot to unpack there so let me let me touch on I think three of the key points that you made Judge Niemeyer because I do think they go to the heart of the uh... the arguments on the other side so first of all on the systemic problem point I would just say factually I know the facts aren't in front of this court but factually it's important to keep in mind the context here I mean this this bank has twelve million customers uh... if if there were issues with systems that were not you know rapidly taking account of the stay that's an important problem I can just tell you my client has has worked to address any issues that that arose as you said this was not this was a good faith problem to the extent that that the uh... the issues here were real uh... so we take those problems very seriously but I would say that the fact that there's a systemic violation of law is not a reason to deny arbitration in any other context you could have systemic violations of the securities laws the antitrust laws the discrimination laws but in all those other contexts the supreme court has made clear you need to enforce arbitration agreements so that's what I'd say on your first point I hate to cut you off but I totally understand what you're saying about all of these other cases but it does seem to me that bankruptcy is a little bit different I mean the bankruptcy code is an unusual statute and that the main point is to like funnel all the claims into one forum that is just not true of something like you know title seven and so I think you really do run into this I think the reason where you see lower courts finding the inherent conflict is almost always with respect to the bankruptcy code is because of this kind of inherent tension between a statute that is designed to consolidate and centralize claims in one forum and then arbitration which is kind of the opposite you privatize all the decision making so let me sort of touch on that in the course of responding to some of the other points that Judge Niemeyer made I think the second thing I would address I think touches on your point as well Judge Harris you know the assumption that we need to have one global solution here really that's a version of the argument that we need a class action to solve this problem because it's a systemic problem and it needs to be solved by the bankruptcy court that's a little bit of a misstatement that we need one solution the statement is it's a little bit like the asbestos cases we need to collect for judicial efficiency and for judicial consistency in a bankruptcy court which has that power you know there's a 542G ruling which is at its peak in this type of thing so the question here is whether all these credit card holders who are getting the very same message can be resolved in one bankruptcy proceeding the class action of course is allowed in bankruptcy but the bigger issue is the channeling of claims into one location coupled with a stay but Judge Niemeyer that's actually not what's being alleged here because what's being alleged here is a class action that would channel all sorts of different bankruptcies that are happening all over the country and have any alleged stay violations in those you know God knows how many bankruptcies are happening all over the country and it would have them be decided by one bankruptcy court who's only presiding over one bankruptcy which is Brown's bankruptcy and so that is actually the opposite of I think what you're suggesting in the asbestos context where you have all these claims that are put in one bankruptcy because it's the company that's allegedly responsible for the asbestos problem that goes bankrupt here it's just different and this is why I think the class action question that's being you know the solution that the plaintiffs come up with is oh we need a class action to do this that is to sound a lot like the arguments that the Supreme Court has rejected over and over again where they've pointed they've rejected the idea that because a class action mechanism would be more efficient and would be a way of giving relief to a lot of people all at once that that's a good reason to avoid arbitration we would also say here by the way the arbitration agreement would apply even if this wasn't in even if the case was proceeding in district court we don't think it could proceed as a class action but I want to I want to hit on the other point that both of you your honors have made which is essentially that this is bankruptcy and therefore it belongs in bankruptcy court a couple things on that first of all the strong form version our argument of that is really the argument that I think that we understand the bankruptcy court to have adopted which is that because this is a core proceeding there's an inherent conflict and we think that's just I don't I think I think that's been rejected and I don't think that was made. I think that's a factor a core proceeding is a strong factor. I think to indicate that bankruptcy is applicable, but it may not be sufficient for the analysis. I think I think the core non-core thing is really it's sort of a red herring because it's really apples and oranges core non-core turns on essentially what are the demands of the Constitution and article 3 and who gets to decide the bankruptcy court of the district court. It doesn't have anything to do with arbitrability, but there's still a core of the point that I think remains might have something to do with arbitrability. The question is if it's a core bankruptcy issue and you have bankruptcy jurisdiction and you have bankruptcy judges with their experience and the tools that they are given. That's different from an arbitrator who's selected pursuant to contract. It's usually a lawyer and handling these on an individualized basis. So let me address that that version of the point. I think with respect to that the question of whether there's like an expertise in the bankruptcy court. I think that's another rationale that the Supreme Court's arbitration jurisprudence has consistently rejected and the assumption underlying the FAA is that arbitrators are fully capable and competent to resolve statutory federal statutory claims, even when they're complicated even when the even when they're really important. I don't think there's any reason why we should assume that an arbitrator wouldn't be capable of doing this. I think I didn't think it capable. I didn't think capability is the issue. It's a contractual arrangement the Supreme Court has favored. In other words, as you remember arbitration was displacing judicial proceedings and courts were very hostile to it. So the FAA and Supreme Court decisions have said hold it. We're going to enforce this. This is a contractual arrangement and we're going to enforce it. But has the court ever said that arbitrators have as much competence as a bankruptcy judge on bankruptcy matters? I don't know that they've said that specifically in the context of arbitration, but they've absolutely said that as a general matter with respect to all sorts of other really tricky statutory schemes. But I think with respect to the question of whether the bankruptcy nature of the claim means that you know that that like itself creates an inherent conflict. I think the answer is no. I think cash call shows that even when you have a statutorily core bankruptcy claim, like the one involving the North Carolina statute in cash call, this court recognized a majority of the court recognized that it could still be arbitrated. I think with respect to if the concern is that sending the automatic stay violation to the arbitrator is somehow going to exclude the bankruptcy judge and take it out of his hands and leave the bankruptcy judge unable to address a problem that's in front of him or her. I think the answer to that is no, because you don't need 362K in order to do that. The bankruptcy judge, in our view, is going to continue to retain authority under section 105A of the bankruptcy code. And so if the judge thinks that there's an automatic stay problem, the judge is going to be able to exercise its discretion and put a stop to it. Can I ask you, just practically speaking, I was sort of struggling with that idea of say this claim goes to arbitration and the arbitrator says there was no violation of the stay. Wouldn't we say then that no court could could come out the other way without it being a collateral attack on the arbitration? No, Your Honor. So that was an issue that was discussed in the Supreme Court's Dean Witter Reynolds case at 470 U.S. 222. The court strongly hinted that that preclusion would not apply. In Cash Call that came up, it was a point... I'm sorry, it would not apply in what context? In the context of when you have an arbitration ruling, whether that arbitration ruling would be preclusive in a district court matter or the district court matter is looking at the same issue in a context that is not arbitrable. And the Supreme Court strongly hinted that the answer was no. They may have strongly hinted that, but I... So I think there's a holding, but just to finish the answer, there was a little bit of a dispute between Judge Niemeyer and Judge Gregory in Cash Call on this point. But then six months later in the Chorley case, this is a case that was cited in our opening brief, and I would suggest the court look at footnote 16. It's at 807 F3rd 566. The court said that arbitration... And I'm quoting... Arbitration awards generally have the same preclusive effect as court orders, but only to the extent the parties agree that the issues could be decided in arbitration. And so in this case, if you had a Section 105 dispute that everyone agrees cannot be decided in arbitration, then there would be no preclusive impact from any ruling in arbitration on the resolution of the 105A dispute. And I think if there were any doubt about that, the court could do what this court suggested or Judge Gregory suggested could be done in Cash Call, which is you could just say, you know, if there were a situation where there was a 105 request and a parallel 362 case, the court could just say, let's... We're going to pause the arbitration until we resolve the contempt issue under 105A. But I think this is a really important point for us because 105A is the backstop. 105A is always going to be there. We're not saying the 105A request for a contempt sanction is arbitrable. And so the bankruptcy, to the extent you're concerned about the bankruptcy court's ability to police the automatic stay, they're going to retain their full authority to do that no matter what happens with a 362 claim for money damages. Now you've fragmented a single claim. You've sent part of it to the arbitrator and the other part is being held by the bankruptcy judge. And he's policing the arbitrator and he has to police all these hundreds or thousands of claims, potential claims. We don't have a class action, but we could have a class action here because there is a systemic challenge. No, I don't think you could have a class action in one bankruptcy court where a bankruptcy judge sitting and adjudicating Ms. Brown's bankruptcy could issue a contempt sanction about alleged violations of other automatic stays in other bankruptcy cases across the country. No, I agree with you. I agree with you. But now you would have the fragmentation of that issue, though. In other words, the bankruptcy court, just assuming in this case, I don't know if that's I know you would have reasons for not, but assuming this is a class action, this court's adjudicating that two claims in this case, two parallel claims and and a class action. And all of a sudden we start having these bankruptcy decisions across the nation which are either in conflict or intention or not stayed or whatever. But your honor, that's that's the system Congress. And so a couple comments on that. First of all, here we don't have to claim. So I don't think there's a fragmentation concern, even if you did have a fragmentation concern where the same issue was going to be looked at in an arbitration on the one hand and in a bankruptcy court case. On the other hand, that's exactly the situation that you had in cash call where the same issue, the validity of the loan was going to be resolved by the bankruptcy court in the context of the declaratory judgment claim. But then by the arbitrator in the context of the North Carolina statutory claim and the fact that two different adjudicators were going to look at that was not a reason to deny arbitration. And then the final thing I'd say is that to the extent that you're worried about the systemic problem and inconsistent rulings about GS Bank's conduct in multiple bankruptcies across the country. I mean, I think that's the system that Congress set up. They wanted different bankruptcy courts to be in charge of their own bankruptcies. And so if GS Bank is allegedly violating the automatic stay in one case, then that's the responsibility of the bankruptcy judge presiding over that case to decide whether there's a violation, whether it was willful, what needs to be done about it. And that may reach a different conclusion from a bankruptcy court in a different district. So I think the premise, which is that you need to have one global solution here, the premise of that sort of suggests that the right way to think about this problem is that we need a class action to resolve contempt sanctions. And that's just not the way the system works. I think the Second Circuit case that the other side cites, the Belton case, which is not an automatic stay case, it's a discharge injunction case, is really good on this. The end of the opinion explains why it makes very little sense to think about class actions being an appropriate mechanism for 105A contempt proceedings. Is the fact that a class action has been alleged an inconsistency with the arbitration clause, which precludes class treatment? I think that the class action allegation is absolutely inconsistent with the arbitration agreement. I think both because if it went to arbitration, you couldn't bring the class action. We think the class action waiver applies even if you're not in arbitration. Although I assume the other side would have a disagreement with us. But more importantly, we think the class action allegation here is inconsistent at a theoretical level with the whole theory of the other side's case. Because their class action theory is essentially that one bankruptcy judge, the bankruptcy judge that's been assigned to resolve Ms. Brown's bankruptcy, is supposed to resolve all of the alleged violations of the automatic stay in countless bankruptcies across the country. That's their theory for class action. But at the same time, their theory is that the reason this can't be arbitrated is because it's really important for the bankruptcy judge to be in control of the particular bankruptcy in front of them. So those two things are inconsistent because they're trying to take away from other bankruptcy judges in other courts, resolving other bankruptcies, the ability to adjudicate alleged misconduct by GS Bank. And so I think that's a problem. And again, the Belton case from the Second Circuit points that problem out really nicely at the end of its opinion. I ask you just one question that I guess touches on this class action thing from the McMahon case in Mitsubishi. It seemed like one of the questions we would be thinking about in considering the inherent conflict question is whether Section 362K is mostly about compensating people when there's been a violation of the automatic stay or whether it's mostly there as kind of a policing mechanism to help enforce the automatic stay. That's the analysis the Supreme Court does in those cases. And no, I mean, no one is actually talking about that here. But it did occur to me that if you thought it was mostly an enforcement mechanism, then there really might be a conflict between shunting it off to arbitration where you would not have enforcement mechanisms like class actions available. So I, although nobody is raising this as an argument, and I wasn't interested in it, do you have anything to add? No, I think it's a great point. I think it strongly supports us. And I think understanding how the 362K cause of action really reinforces this, and it dovetails with what I was saying about 105A. So the way to think about this, I think, Judge Harris, is that 105A is the enforcement mechanism. It's the mechanism that allows bankruptcy judges to enforce their orders and enforce, you know, things like the automatic stay. That was the case before 1984 when that was the only way you could enforce the automatic stay violation. It continues to be the case now going forward. Courts all the time are invoking 105A as the enforcement mechanism. And it has to be that way in part because most circuits think, for example, that a corporation does not have a cause of action under 362K. So if a corporation is subject to an automatic stay violation, they need to rely on 105A. 362K also only applies to willful violations. So if you have an accidental violation, you can't do anything under 362K, but you still can get relief under 105A to fix the problem. And so 105A is the backstop. That's the one that's been there forever. That's the enforcement mechanism. What Congress did in 1984 with 362K is create something new, which is a private right of action for money damages to allow people to collect things like emotional distress damages, for example, that this court held in the Walters case is just categorically not available under 105A. And so the purpose of this is compensatory. And that's why it says it shall award actual damages and then in some cases punitive damages. That's the purpose of this right of action. And it looks a lot like any other statutory cause of action, private cause of action for damages that we would all agree would be arbitrable in the ordinary course. And that's why it's important to recognize, though, we're not saying that this is we don't think this is the policing function. We think the policing function and the policing authority of the of the bankruptcy court in here is in 105A. And that authority persists even when a claim is arbitrated. Thank you. That's helpful. All right, we've gone quite over, but it's a it's a very complex question, and we'll hear back from you, Mr. Martinez. You have some rebuttal. Thank you. Bartholomew. Yes. Good morning, your honors. And may it please the court. Theodore Bartholomew on behalf of the plaintiffs appellees, Rhea Brown and Gregory Mays. I think I'd like to respond to a couple of the points that the court was discussing before I get into my presentation in chief because I think they're really important. First, as Judge Niemeyer held in the Houk case, jurisdiction over automatic stay violations continues after a case is closed or dismissed. So to the extent that there's a suggestion that somehow the court no longer has an interest in Mr. Mays's case or the fact that the automatic stay was violated in this case is inconsistent with that holding from Houk. Well, let me tell you, let me raise a question with you about about this. That's been troubling me. The bankruptcy here is Ms.  She's bankrupt. And what you just said is fine. After the bankruptcy, there's still a policing effort. My question is the channeling concept of the bankruptcy code usually is to protect a debtor from multiple claims all over and pull them in. And I just use the asbestos thing as one example where they pulled everybody in. And the bankrupt in those cases was a corporation that had asbestos claims or many asbestos claims. Here, the corporation is not in bankruptcy. What we have is an individual in bankruptcy. And the question and so there's no real challenge and channeling of claims here. There's only one claim. It's her claim under 562K. And the only way we can get something analogous to it is the concept of a bankruptcy class action. I must say, I've not seen one of those. And I don't know if there are different restrictions to establish. But all of a sudden you have a bankruptcy court in one district asserting control over bankruptcies across the country. That's a pretty heavy deal. And that's, I think, what you're asking here. So what I'm really asking is this whole attractive idea of channeling claims into one court and making them uniform is a little bit on the flip side. Because she doesn't have many claims to protect. She has the one claim from the bank. And she has a claim, a 362K claim against the bank. Why couldn't that just as well be adjudicated in arbitration? I think there's several components of your question, Your Honor. So I'll start with class actions and bankruptcy. I'm proud to say that we've successfully certified several, including in the Western District of North Carolina and before the bankruptcy. What happens in that case? What happens in that? Does the if there are other bankruptcies across the country by creditors with credit cards, does the bankruptcy court in North Carolina? How does it seize these bankruptcy claims that are open and pending and other countries as states? Well, the bankruptcy rules include Rule 7023, which is, of course, an incorporation of Rule 23. So as the bankruptcy judge in this case recognized, that's there for a reason. And it does allow sort of an expansion on the idea behind the 105A authority.  And so, well, I know. But you have a bankruptcy court in Nevada that's open right now and handling a credit card claim against the bank against the question is without a multidistrict litigation mechanism. Somehow does the district court or the bankruptcy court in North Carolina seize that case away from the court in Nevada? Well, it's the the issue is that the bankruptcy court through the class certification process, which entails notice that goes out to all of the trustee. I know that I know the class action front and backwards. You know, I was on the rules committee and lectured on it and so forth. And it's a very complex issue of how it works. But my question is that normally brings relates to parties, claims or defenses across the country. But when you have two or three district courts who have certified classes, it doesn't a one bankruptcy court can't stop another bankruptcy court, can it? Well, so the the procedural mechanism that we've employed in the past is for the bankruptcy court to grant preliminary certification and then for the district court to withdraw the reference and grant final approval. And so the notice goes out, the courts and the trustees have an opportunity to voice their objections to final approval. They have notice of it and that process. That doesn't I know that process, but that process doesn't tell the court another court what to do, does it? It tells parties it's representative class is representation of other parties before the court. Now, maybe you could instruct the parties to withdraw their claims somehow. But now you're getting into a notion they would have to withdraw their bankruptcies. Well, I think they're not. I beg your pardon, your honor. I was going to say they would the North Carolina Bankruptcy Court could not subsume the bankruptcy of another court. Correct. And these are adversary proceedings that are that are in tandem with but separate and apart from the underlying bankruptcy case. And the issue that's resolved is a private right of action, as all the parties agree here. And that private right of action carries with it certain remedies, both to compensate the debtor and to vindicate the authority of the court. As this court is recognized in budget, the better home in 1986, 362 K or what is now 362 K essentially rendered irrelevant. The question of the extent of the bankruptcy court's authority to enforce 362 by congressional. But yeah, yeah. You know, somehow you're not quite satisfying me as to what our core problem is. And this is a genuine problem I haven't figured out. But we have a Mrs. Brown files a bankruptcy. She gets an automatic stay. The stays violated. She files a claim into 362 K. Now, the question is, that claim is connected with her bankruptcy. She's trying to enforce the stay. You have Mr. Jones who did the same thing in Nevada. And the bankruptcy court there has a 362 K claim. And the bank is going to ask that arbitration to go. You somehow want to channel the Nevada claim into North Carolina. And I can't see how you do that. In other words, the normal channeling is when the corporation has claims, multiple claims against it. And the corporation is trying to channel the claims. But here, she doesn't have multiple claims. She's making one claim on her own behalf. And she's making it on behalf of others. But the others have already chosen bankruptcy in other places. Your Honor, I think the thing that maybe I want to make sure I'm understanding is this. Which is the cause of action has accrued in however many hundreds or thousands of cases around the country. It has not necessarily been asserted in most of them. And in fact, that's part of the problem with this particular type of issue. Because it's persistent and it degrades the purpose of the stay. But because of the dollars involved, it's rarely, in fact, enforced. And so, in the instance of conflicting or parallel litigation, I think that that would be an easy opt-out for the debtor in that case if they wanted to continue pursuing their litigation. They can continue pursuing their litigation and not be brought into this class case. Just like any other litigant can opt out of participation in a class and pursue their own individualized claim. So, we don't see that as being a real barrier to the issues here. The other point, though, that I think is implicated by the court's question is sort of this parallel between the contempt authority. Which certainly when 362 was first passed in 1978, it was without a specific remedy provision. And so, its enforcement depended entirely on the court's contempt authority based on the order for relief that's effective upon the filing of a bankruptcy case. Congress recognized that that created inefficiency and inconsistency because contempt remedies are not always interpreted the same in all jurisdictions. And, in fact, the Belton case that counsel has cited today and the Crocker case and the Fifth Circuit and others have recognized that in the context of a traditional injunction, courts are limited to simply resolving the issues that are before them. But by creating a private right of action, Congress essentially transformed that regular contempt authority into a statutory cause of action. That entails the punitive remedy, which is there not to compensate the consumer or the debtor, but actually to vindicate the authority of the court over the process itself. And certainly, there's no reason why the bankruptcy court in this case can't consider the impact, should this become a matter that is certified as a class, of the system-wide practices which, again, we've alleged and the bankruptcy court recognizes have occurred over a period of years. In spite of numerous other lawsuits having been filed against Goldman Sachs, the practices have continued. Even in the face of being informed directly by telephone, they said, you know, it's not our job to call your lawyer. It's your job to pay your debts, right? So there's an institutional sort of absolute unwillingness to heed the requirements, the statutory requirements of the automatic stay, that the bankruptcy court, upon the filing of a bankruptcy case, is charged with protecting, right? And so the process that Goldman contemplates is one that, as the court has recognized, completely privatizes, hides, fragments, and deprives the bankruptcy courts themselves, either individually on a class basis or, you know, on each individual basis, from being able to actually regulate the practice of creditors before them. Let me ask you this. Do we have any cases where Section 362K claims have been arbitrated? Cases where they have been arbitrated. Counsel for Goldman has identified a handful where the 362 claims were compelled to arbitration. Nobody would know if they were ever actually arbitrated because the arbitration occurs confidentially. Has any court held that because it's a 362K claim, it should not be arbitrated? Yes. In fact, several courts in the Fourth Circuit have so held, including, I'm sorry, just a moment, Your Honor. Including in Lucas v. Mickens, that's Maryland 2004 312 Bankruptcy 559 v. Dash v. Star Tech 300 BR 244. Little v. Career Education Corp 610 BR 558, that's from 2020 from Judge Waits. And, you know, there are numerous out-of-circuit opinions that have also, from the bankruptcy court perspective, agreed that, in fact, both in putative class actions and individual cases, that arbitration is incompatible with the purposes of the code. I would point especially to Brown v. Mortgage Electronic Registration Systems 354 BR 591, that's from Rhode Island in 2006. And in that case... What's the justification of these courts? What's the justification? Set aside the class action. I'm having some troubles with that right now, and I have to think that through. But what's the justification, absent the class action, of handling, having a 362K claim arbitrated? It's a court claim. We all agree on that. But is there any other aspect about it that should suggest the bankruptcy court should do it rather than the arbitrator? I'm glad you asked. Yes, Your Honor, there are several aspects of it. And, in fact, we'd look at the Rushing v. Green Tree Servicing Case 443 BR 85. And that case in particular, which has been cited elsewhere as well, recognizes that there's, you know, fundamental importance and purposes of the automatic stay is critical to the bankruptcy system's functioning. And in particular, that the stay itself is not just a private right. It's a public right that applies and benefits not just the debtors, but all of the debtors' creditors as well. And so a violation is not just a private injury. It strikes at the bankruptcy system. And Congress adding this punitive damages specific authority recognizes, whereas the punitive authority under the inherent authority of courts and the sanctions powers in 105A has been interpreted sort of inconsistently over time. Congress explicitly provides this punitive damages remedy, again, not just to benefit debtors, because punitives are not, in fact, compensatory, but actually to allow the court to vindicate the integrity of the system and to vindicate judicial authority. And so by, you know, trying to remove these proceedings from bankruptcy, hide them in the arbitration context. And again, I would ask the courts to consider the actual language of the arbitration agreement. I think Judge Niemeyer, you've referenced that already. But the arbitration agreement here is explicit that the arbitrator is precluded from awarding any relief for the benefit of anybody other than the individual, meaning the debtor in this instance. Right. And so insofar as punitive damages are intended to vindicate judicial authority and vindicate the process itself, the arbitrator under this agreement, under its terms, is precluded from awarding that kind of a remedy. And as such, it actually flies in the face of the Supreme Court's Mitsubishi opinion, which holds that arbitration clauses are unenforceable when they prevent the parties to the arbitration clause from actually being able to obtain the remedies the law authorizes. Another case that I think is really instructive is Grant v. Cole. That's cited by Judge Black in the bankruptcy opinion below, 281 BR 721. And in that case, Judge Mahoney, an excellent bankruptcy judge from Alabama, noted that punishment of a stay violation is necessary not just to compensate a party, but to ensure future compliance with the judicial system, and that an arbitrator cannot be allowed to take the role of protector of the judicial process when he or she is outside the system and is an alternative to the system. So, as judges, we think that it's probably particularly, you know, something that y'all can understand in the sense that the bankruptcy courts, upon the filing of a case, are assigned that case and assign the responsibility for administering the case. Congress created the automatic stay to bring that case together to effectuate the administrative purposes of the bankruptcy code, to centralize disputes, and to bring them all before a single judge. And when a stay violation happens, it offends the judge and other creditors in the process. So, your argument is that any 362K claim should remain in bankruptcy when challenged under an arbitration agreement. In other words, categorically. Your Honor, the standard, of course, is discretion. And I can't conceive of any potential automatic stay violation that might potentially come to a bankruptcy court. One case that's certainly in the air is the Second Circuit's opinion from Hill, in which the Second Circuit declined to, or, you know, compelled arbitration of a stay violation claim. While the facts here are distinguishable in that there, the money that had been taken had already been refunded, essentially conceding the stay violation. And the relief that was sought was, at that point in time, solely 362K relief. Whereas we have our claims for injunctive declaratory and contempt remedies, in addition to our 362K claims. The real difference is, in that case, there was just one plaintiff. In this case, was there a 105 injunction issued? A 105 injunction issued? I'm not sure I'm following the question. In connection with the stay. Was the stay enforced by injunction, or you're just relying on the automatic stay? Your Honor, our position is that the automatic stay, as created by Congress in 1978, has always been an injunction. And it is such because it comes into effect by virtue of the order for relief that is issued upon the filing of a petition under Section 301 of the code. There is an enforceable order that the bankruptcy judge, upon being appointed to the case, is charged with enforcing under 362A. And so it's still an injunction, it's just granted this private right of action, which allows us to distinguish this case from the cases that hold that discharge injunction violations, for example, are not cases that can be litigated on a class-wide basis. We have quibbles with the reasoning behind those cases, but it essentially is that the discharge injunction are separate, discrete orders issued by the courts. Of course, there are orders that are compelled by the statute, and there are form orders that are uniform, but nevertheless, those cases indicate that the only way to enforce the discharge injunction is through inherent authority and as injunctions in an ordinary sense. And here we have an explicit private right of action that does allow this to be enforced outside of the injunctive remedies. And we actually think that the Budget v. Better Homes case from this circuit reflects this court's judgment that that was Congress's decision to not restrict the bankruptcy court's ability to enforce the automatic stay solely to its injunctive remedies, but to actually authorize specific private rights of action. I see my time is up, Your Honor. I know we went over last time, and I've got more to say if that's all right. Well, I think we understand your position, and why don't we go back to Mr. Martinez at this point. Mr. Martinez? Thank you, Your Honor. Just a couple points to hit in rebuttal. First of all, I think with respect to the question about whether other courts have adjudicated the question of 362K going to arbitration or not, my friend on the other side went straight to the district court decisions. He left out a bunch of the bankruptcy court decisions. We cite them at pages 33 to 34 of our brief. Eventually, my friend got around to mentioning the Second Circuit case, which is the only circuit court of appeals level case that has addressed this issue and has come out our way. That's the Second Circuit's decision in Hill. So I think that you would create a circuit split if you rejected the Hill theory and you agreed with the other side of this case. Just while we're on the topic of precedent, I also think the other precedent that hasn't gotten maybe enough discussion is cash call itself, which, as I mentioned earlier, did involve a statutorily court claim and where very similar arguments were made about the importance of the bankruptcy court needing to resolve that, and the court nonetheless sent the claim for money damages, which we think is analogous to the 362K claim here. Can I ask you about that? So when at least, I mean, that opinion, right? There's a lot of different opinions, a lot going on. But Judge Gregory's vote was necessary for that holding, if I'm remembering right. Yes. And he was prepared to send that claim out of the bankruptcy because he said the effect on the estate would be attenuated. That was point one. But also extrinsic, which I took to be sort of, you know, invoking sort of the way the Fifth Circuit approaches this, like is this an intrinsic bankruptcy right or is this just do you get the right because of the bank? What do you do with the word extrinsic there? I know we're parsing this. I think it was extrinsic to the core concerns of the code because really the only thing that was being adjudicated was whether extra money was going to come in, where the core purposes of the code are designed to really adjudicate the debtor's  And the case, the North Carolina claim there and the 362 claim here is not going to adjudicate the debtor's obligation. I thought that was an easier question because for exactly the reasons Judge Gregory gave, not only was the effect on this estate attenuated, but also this is an extrinsic right. If North Carolina law gives you a right to get out from under this loan, that's different from the bankruptcy stay and this claim, which you get only because of the bankruptcy code. But I think two things on that. First of all, I think the question on inherent conflict isn't so much the source of the right, but rather whether there's a conflict with who has to adjudicate it, whether there's a conflict with having an arbitrator adjudicate it. And there the same kind of arguments were made about the bankruptcy court needing to have control of it because it was going to add to the money that was In addition, I would just note, Judge Harris, Congress determined that that claim that was at issue, the North Carolina claim in cash call was a statutorily core claim. So Congress's view is that it wasn't extrinsic. I thought your version was like, oh, we shouldn't whether something is core or not doesn't detract. They arbitrate it, but it might determine whether something is intrinsic or extrinsic to bankruptcy. I think it might be, we may be putting a lot of pressure on the use of the word extrinsic in Judge Gregory's opinion, but to the extent that it does invoke the fifth circuit approach, that's what made me think of it. Like the fifth circuit really does. The big question for them is, do you have this right as a result of the bankruptcy code, or do you have it from somewhere else? I think that's essentially, if that's really the question, then you are buying it. I don't think that's how I would describe the fifth circuits approach, because I think that would mean that, that, that 362 K claims are automatically in just because they're creating, you know, the cause of action appears in title 11. I don't think that's right. I don't think that's how the fifth circuit would, would look at that. If it got this kind of case, can I just make a couple of additional points with respect to, you know, my friend on the other side said that our approach would completely privatize policing and enforcement of the automatic stay. That's just not right. For all the reasons we've said, one Oh five, a remains available. It's a very important remedy. It's the remedy that corporations use to police automatic stay violations in the vast majority of circuits across the country. What about, what about, what about punitive damages? He made a point. I was going to get to that.  Punitive damages are, we don't think are available under one Oh five a, but, but, you know, we do think they're available in arbitration. So I, we, we, we, and maybe we're somewhat against interest on that, but we think that in general, you know, it's okay for arbitration agreements to allow for punitive damages. And we don't read the arbitration agreement here to leave those out. And so we don't think that's a consideration that, that should work against us, work against us here at all. I would just say with respect to one Oh five a, I mean, that's the same authority that is invoked to enforce the, the discharge order in bankruptcies, which is a fundamental aspect. And so the idea that one Oh five a is somehow impotent or isn't capable of addressing this just isn't right. And while it's true, of course that Congress created a special private right of action for damages, I think that supports us because what they created was essentially a statutory claim. That's analogous to the kind of claim that was at issue in the North Carolina case. Can I just take 20 seconds to make one final point? All right. 20 seconds, 20 seconds. The last thing I'll say is I think the discussion about channeling was, was interesting. And at a policy level, you know, you raised a judge Niemeyer, a lot of important points, but I just want to remind the court, the inquiry really here is, is one of statutory interpretation. Is there an inherent conflict between the purposes of the bankruptcy code and arbitrating these claims? And is that inherent conflict clear manifest and irreconcilable? I think the confusion, the understandable confusion on all sides and the, and the complexity of these issues suggest that there is no clear manifest irreconcilable conflict between the two statutes. And we urge you to, to enforce the arbitration agreement. Thank you, your honors. Thank you. Thank you both for your very sophisticated arguments. This is a, a dicey claim and we're going to probably have to do some further looking into all these issues that we've had at this point in time. We would come down and shake hands and probably seek further advice from you. Were we in Richmond, but we can't do that. And so we do so virtually here and extend our handshakes as, as is the tradition of the four circuits, a proud tradition. And we're happy to have both of you before the court with that said, no further matters before the court. We'll adjourn for today. Thank you, your honors. This honorable court stands adjourned until tomorrow morning. God save the United States in this honorable court.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris